IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| The University of Chicago Medical Center<br>d/b/a University of Chicago Hospitals & Clinics,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Michael O. Leavitt, Secretary<br>U.S. Department of Health and Human Services,<br><br>　　　　　　　　　Defendant. | Case No. 1:07-cv-07016<br><br>Judge Wayne R. Andersen |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of this Court, Plaintiff University of Chicago Medical Center ("Plaintiff" or "Provider") respectfully submits the following statement of material facts as to which Plaintiff contends there is no genuine issue:

1.　　Plaintiff is a not-for-profit acute care teaching hospital, located in Chicago, Illinois, that participates in the Medicare program. (Complaint ¶¶ 1, 7, 23; Answer ¶¶ 1, 7, 23.)

2.　　Defendant is the Secretary of the Department of Health and Human Services ("DHHS") and is the federal officer responsible for the administration of the Medicare Program, pursuant to the Social Security Act. Defendant has delegated administration of the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"). (Compl. ¶ 8; Answer ¶ 8.)

3.　　This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, which establishes the Medicare program, and the Administrative Procedure Act, 5

U.S.C. § 551, *et seq.* This Court thus has jurisdiction under 42 U.S.C. § 1395oo(f), 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 28 U.S.C. § 1361, and venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1). (Compl. ¶¶ 4, 5, 6; Answer ¶ 6.)

4. At all times pertinent to this dispute, Plaintiff operated medical training programs for physician interns, residents, and fellows (collectively "residents") in various specialty and sub-specialty areas. (Compl. ¶¶ 1, 7; Answer ¶¶ 1, 7; Administrative Record ("AR") at 34, 149.)

5. Plaintiff's medical training programs qualify as "approved" medical residency programs eligible for Medicare reimbursement. A majority of Plaintiff's residency training programs are approved by the Accreditation Council for Graduate Medical Education ("ACGME"), an organization recognized by CMS as an acceptable authority for determining whether a graduate medical education program is approved for purposes of the Medicare program and the indirect medical education ("IME") payment regulations. (Compl. ¶ 24; Answer ¶ 24; AR at 34, 149 and, *e.g.*, 1517 (pediatric pulmonology), 1519 (thoracic surgery).)

6. Among the standards for approval set by ACGME and other certification bodies is the requirement that residents participate in research and scholarly activity in addition to their clinical responsibilities. (Compl. ¶ 24; Answer ¶ 24.)

7. Residents in Plaintiff's medical residency programs participate in scholarly activity, such as medical research, in order to obtain their specialty or subspecialty certifications. (Compl. ¶ 24; Answer ¶ 24.)

8. Residents rotate through a number of training areas in connection with their chosen specialties. Nearly all residents are required to participate in a research rotation, during which the residents engage in research activities in furtherance of their specialty certifications. Residents remain assigned to the hospital during their research rotations. (Compl. ¶ 25; Answer

¶ 25.)

9. For purposes of claiming Medicare reimbursement for its fiscal year ending June 30, 1996 ("FY 1996"), the relevant time period for purposes of this dispute, Plaintiff included the time spent by residents in the hospital complex engaged in research and other scholarly activities when determining its resident full-time equivalent ("FTE") count for the IME calculation. (Compl. ¶ 26; Answer ¶ 26.)

10. The regulations adopted by the Secretary during this time required that, in order to be included in the IME FTE count, a resident must be in an approved teaching program and:

> be assigned to one of the following areas:
> (A) The portion of the hospital subject to the prospective payment system.
> (B) The outpatient department of the hospital.

42 C.F.R. § 412.105(g)(1)(ii) (1995). (Compl. ¶ 20; Answer ¶ 20.)

11. All residents claimed by Plaintiff for FY 1996 were assigned either to inpatient areas of the hospital complex subject to the prospective payment system ("PPS"), or to outpatient clinics of the hospital. (Compl. ¶ 31; AR at 34, 149.)

12. During FY 1996, Plaintiff operated only two units within the hospital complex that were excluded from PPS: an inpatient psychiatric ward, known as "Ward 4," and the General Clinical Research Center ("GCRC"). (AR at 149, 199.) None of the FTEs at issue reflect time spent in these two units. (AR at 149, 199, 288-295, 1433-1495.)

13. Plaintiff's Medicare fiscal intermediary, National Government Services (formerly, AdminaStar Federal) (the "Intermediary"), conducted an audit and subsequently adjusted Plaintiff's FY 1996 IME payment in a Notice of Program Reimbursement ("NPR") to exclude from the IME calculation time spent by residents engaged in the portions of their approved residency programs involving research and other scholarly activities. Plaintiff initially calculated

that this exclusion resulted in the loss of 50.86 FTE medical residents for FY 1996, but upon further audit, the Intermediary and Plaintiff determined that the exclusion resulted in a loss of 51.81 FTEs.  (Compl. ¶ 27; Answer ¶ 27; AR 34, 1602-1647, 2211-2216.)

14.    The Intermediary justified its exclusion of the residents' research time by asserting that, in order to include such time, Plaintiff was obligated to show that the residents' research involved direct patient care.  (Compl. ¶ 28; AR 1547-1600.)

15.    In excluding the residents' research time, the Intermediary relied on a new regulation excluding research that did not involve direct patient care.  This regulation did not become effective until October 1, 2001.  The Intermediary claimed that this new 2001 requirement was but a clarification of longstanding policy, and that it was simply applying the existing policy when it issued its NPR excluding resident research time from Plaintiff's FY 1996 IME payment.  (Compl. ¶ 29; AR 1547-1600.)

16.    Upon receipt of the NPR, Plaintiff timely filed notice of appeal with the Provider Reimbursement Review Board ("PRRB"), appealing the Intermediary's disallowance of resident time spent in research and other scholarly activities, along with other issues that are no longer in dispute.  (Compl. ¶ 30; Answer ¶ 30; AR 2209-2210.)

17.    Medicare auditors began reviewing Plaintiff's FTE claims as early as May 2003.  (AR at 2191.)  Plaintiff submitted documentation throughout 2005.  (*See, e.g.*, AR at 2162, 2102-2117.)  As a result of this review, the parties settled all issues other than IME research.  (AR at 147-50.)  The IME research issue was itself narrowed to the purely legal issue of whether research time is includable in the IME FTE count.  (AR at 147-50.)

18.    On February 28, 2007, the parties stipulated before the PRRB as follows:

1.    The sole issue remaining in this appeal is whether the Intermediary properly excluded time spent in research in determining the

{D0206206.DOC \ 3 }4

> Provider's count of full-time equivalent residents ("FTEs") for purposes of calculating the Provider's indirect medical education ("IME") payment under 42 U.S.C. § 1395ww(d)(5)(B).
> 2. If this issue is decided in the Provider's favor, an additional 51.81 FTEs would meet all applicable requirements for inclusion in the Provider's FTE count for purposes of calculating the Provider's IME payment, and the Provider's IME FTE count would be increased by 51.81 FTEs.
> 3. No factual disputes are at issue in this appeal.

(AR at 149.)

19. Based upon an on-the-record hearing, position papers, and evidentiary materials submitted by Plaintiff and the Intermediary, the PRRB ruled unanimously on August 8, 2007, that the Intermediary's exclusion of research training time from Plaintiff's IME FTE count for reimbursement purposes was improper.  (Compl. ¶¶ 2, 31; Answer ¶¶ 2, 31; PRRB Hearing Dec. No. 2007-D57 (August 8, 2007) at AR 131-136.)

20. Citing its ruling in a prior decision, the PRRB reaffirmed that the Medicare regulation in effect during the cost reporting period at issue did not exclude research time from the IME FTE resident count, nor did it require resident time to be related to patient care. Furthermore, the PRRB found that the 2001 amendment to the IME regulation excluding non-patient care research time represented a change in policy that could not be applied retroactively to FY 1996.  The PRRB also noted that it was undisputed that the residents at issue were enrolled in an approved medical residency program and worked in either the inpatient PPS or outpatient areas of Plaintiff's facility.  (Compl. ¶ 31; Answer ¶ 31; PRRB Hearing Dec. No. 2007-D57 (August 8, 2007) at AR 131-136.)

21. The PRRB ordered the fiscal intermediary to "to recalculate the IME adjustment to incorporate the time spent by residents in research activities that were part of their approved medical residency program."  PRRB Hearing Dec. No. 2007-D57 (August 8, 2007) (AR at 136).

22. The Secretary, by his delegate, the CMS Administrator, notified Plaintiff by letter dated October 11, 2007, that he had reversed the PRRB's decision. The CMS Administrator's decision claimed that the Medicare program had a "longstanding policy" of excluding time spent by residents involved exclusively in research from the IME FTE count. In addition, contrary to the PRRB's factual finding and to a stipulation of the parties, the CMS Administrator questioned whether Plaintiff had demonstrated that the FTE residents at issue were assigned to portions of Plaintiff subject to PPS or to outpatient departments. (Compl. ¶¶ 2, 32; Answer ¶¶ 2, 32; Decision of the Administrator, (October 11, 2007) at AR 1-14, 34-35, 149-150.)

23. Having exhausted its administrative remedies, Plaintiff timely filed this suit within 60 days of receipt of the CMS Administrator's decision. (Compl. ¶ 33; Answer ¶ 33.)

Respectfully Submitted,

University of Chicago Medical Center
By its counsel,

Ronald S. Connelly
D.C. Bar No. 488298
Mary Susan Philp
D.C. Bar No. 295287
POWERS PYLES SUTTER &
VERVILLE, PC
1501 M Street, NW, 7th Floor
Washington, DC 20005
tel. (202) 466-6550
fax (202) 785-1756

/s/Michael V. Casey
Illinois Bar No. 6180115
VARGA BERGER LEDSKY HAYES &
CASEY
A Professional Corporation
224 S. Michigan Avenue
Suite 350
Chicago, IL 60604-2507
tel. (312) 341-9400
fax (312) 341 2900

Dated: July 18, 2008.

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing Statement of Material Facts Not in Dispute with the Clerk of Court using the Case Management/Electronic Filing System ("CM/ECF") system, which sent notification of such filing to the following:

PATRICK J. FITZGERALD
United States Attorney

KATHRYN A. KELLY
Assistant United States Attorney

AUSA
usailn.ecfausa@usdoj.gov

219 S. Dearborn Street
Chicago, IL 60604
(312) 353-1936

and by email to,

Ronald S. Connelly, Esq.
Mary Susan Philp, Esq.
Powers Pyles Sutter & Verville, PC
1501 M. Street NW
7th Floor
Washington, DC 20005

Parties may access this filing through the Court's system.

/s/ Michael V. Casey
MICHAEL V. CASEY
Illinois Bar No. 6180115
VARGA BERGER LEDSKY HAYES & CASEY, PC

Dated: July 18, 2008.